UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| | | |
|---|---|---|
| JIM HENRY, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | No. 3:16-CV-689 |
| v. | ) | |
| | ) | Judge Collier |
| ROANE COUNTY, TENNESSEE, | ) | Magistrate Judge Shirley |
| | ) | |
| *Defendant.* | ) | |

# M E M O R A N D U M

Before the Court is Defendant Roane County, Tennessee's motion for summary judgment on all of Plaintiff Jim Henry's claims. (Doc. 17.) Plaintiff responded in opposition (Doc. 23), and Defendant replied (Doc. 24). The Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion for summary judgment (Doc. 17). The Court will **GRANT** Defendant's motion as to Plaintiff's state-law claim and his claim for punitive damages. The Court will **DENY** the remainder of Defendant's motion.

## I.   BACKGROUND

Plaintiff worked for Defendant in the Roane County Highway Department (the "Department") from 1985 until 2016. Dennis Ferguson was first elected to the position of Roane County Road Superintendent (the "Road Superintendent") in 2012. He thereby became Plaintiff's boss. In addition, by state law, a county road superintendent is "authorized to determine the total number of employees of the highway department, to determine personnel policies, hours of work, to establish job classifications, and to establish policies and wages within the classifications." Tenn. Code Ann. §§ 54-7-103, 54-7-109(c).

During the 2012 election, Plaintiff had supported a different candidate, Brian Mullins. Four years later, when Mr. Ferguson ran for reelection, Plaintiff again openly supported Mr. Mullins as a candidate for Road Superintendent. According to Defendant, Plaintiff was "disruptive . . . to the functioning and discipline of the . . . Department" and several employees complained to Mr. Ferguson about Plaintiff's activities. (Doc. 17-1 [Ferguson Decl.] ¶¶ 8, 10.) Plaintiff disputes these allegations. Mr. Ferguson terminated Plaintiff's employment on April 28, 2016, allegedly because of Plaintiff's "constant disruptive influence on [Mr. Ferguson's] staff, . . . employees, and . . . unit." (*Id.* ¶ 13.)

Plaintiff filed a complaint against Defendant on December 31, 2016, alleging that during the "spring of 2016, [Plaintiff], on his private and personal time, assisted and helped [Mr.] Mullins for Road Superintendent through campaigning and helping install campaign signs" and that Plaintiff "was terminated due to his political beliefs and political affiliation." (Doc. 1 [Compl.] ¶¶ 5, 13.) Plaintiff claimed his termination violated 42 U.S.C. § 1983 and Tennessee Code Annotated § 2-19-134. (*Id.* ¶¶ 11, 12.) By leave of Court (Doc. 29), Plaintiff filed an amended complaint on May 14, 2018, asserting the same two causes of action, but clarifying that he "was terminated due to his political beliefs, political affiliation, *political speech, and/or political conduct.*" (Doc. 30 [Am. Compl.] ¶ 13 (emphasis added).)

Defendant filed its motion for summary judgment on September 18, 2017. (Doc. 17.) As to Plaintiff's claim under 42 U.S.C. § 1983, Defendant argues there was no constitutional violation because Plaintiff's speech was not protected under the First Amendment, Plaintiff's affiliation with Mr. Mullins's campaign was not a substantial factor causing his termination, and Plaintiff would have been terminated even without his affiliation with Mr. Mullins. Defendant further argues it

cannot be held liable under 42 U.S.C. § 1983 because it did not have a policy, practice, or procedure that caused any violation of Plaintiff's constitutional association or speech rights.[1]  As to Tennessee Code Annotated § 2-19-134, Plaintiff argues the statute creates no private cause of action and Defendant did not violate the statute in any case.   Last, Defendant moves for summary judgment on Plaintiff's claim for punitive damages because punitive damages cannot be awarded against governmental entities.

Plaintiff responded on February 15, 2018, contesting Defendant's entitlement to summary judgment on Plaintiff's claim under 42 U.S.C. § 1983.   (Doc. 23.)   Plaintiff did not respond to Defendant's arguments regarding Tennessee Code Annotated § 2-19-134 or punitive damages. Defendant replied on February 22, 2018.   (Doc. 24.)

## II.   STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The moving party bears the burden of demonstrating no genuine issue of material fact exists.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888,

---

[1] Defendant filed its motion for summary judgment before Plaintiff filed his amended complaint clarifying his claim that his termination violated his free-speech rights.   Because of this timing, part of Defendant's motion is premised on the position that Plaintiff's complaint did not, in fact, extend to his speech rights.   Defendant nevertheless devotes one fourth of its memorandum of law, and an additional page of its reply, to arguing it is entitled to summary judgment on any speech claim Plaintiff may have asserted under § 1983.   (*See* Doc. 18 at 9–13, Doc. 24 at 13–14.)   The Court therefore concludes that the filing of Plaintiff's amended complaint does not require any further briefing from the parties on Defendant's motion for summary judgment.

897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

The Court's role at summary judgment is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

III.    **DISCUSSION**

Defendant seeks judgment as a matter of law on Plaintiff's cause of action under 42 U.S.C. § 1983, his cause of action under Tennessee Code Annotated § 2-19-134, and his request for punitive damages.

A.      **42 U.S.C. § 1983**

Under 42 U.S.C. § 1983, a plaintiff's prima facie case consists of three elements: (1) the plaintiff "engaged in constitutionally protected speech or conduct"; (2) an adverse action was taken against the plaintiff "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) there was a causal connection between the conduct and the adverse action, meaning "the adverse action was motivated at least in part by" the protected activity. *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012); *see also Sowards v. Loudon Cty.*, 203 F.3d 426, 431 (6th Cir. 2000). If the plaintiff establishes a prima facie case, the burden then "shifts to the employer to demonstrate 'by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct.'" *Dye*, 702 F.3d at 294 (quoting *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010)). Unlike the familiar *McDonnell Douglas* framework, the burden does not then shift back to the plaintiff to show pretext. *Id.* at 295. Evidence of pretext may, however, be relevant in considering whether a defendant has met its burden to show the adverse employment decision would have occurred even without the protected conduct. *See, e.g.*, *Hodges v. Van Buren Cty.*, 227 F. Supp. 3d 907, 920 n.14 (E.D. Tenn. 2017).

Defendant does not dispute that Plaintiff's support of Mr. Mullins's candidacy is constitutionally protected conduct satisfying the first element of Plaintiff's prima facie case under

a freedom-of-association theory. *See Sowards*, 203 F.3d at 432 ("Support of a political candidate falls within the scope of the right of political association."). Nor does Defendant dispute that Plaintiff's termination constitutes an adverse action satisfying the second element of his prima facie case under a freedom-of-speech or a freedom-of-association theory. *See Dye*, 702 F.3d at 303 ("It is elemental that terminations are adverse employment actions.")

Defendant attacks several other parts of Plaintiff's Section 1983 case, however. As to Plaintiff's freedom-of-speech claim, Defendant attacks the first element of the prima facie case, whether there was constitutionally protected activity. (Doc. 18 at 9–13.) As to Plaintiff's freedom-of-association claim, Defendant attacks the third element of the prima facie case, causation. (Doc. 18 at 6–8.) Defendant next argues that, even if Plaintiff has established a prima facie case and the burden of proof shifts to Defendant, Defendant can prove Plaintiff still would have been terminated even if he had not engaged in the protected conduct.[2] (Doc. 18 at 8–9.) Finally, Defendant argues there is no basis for municipal liability under Section 1983 because Plaintiff has not shown a policy or custom that caused any violation of Plaintiff's constitutional rights. (Doc. 18 at 13–15.) The Court addresses these four arguments below.

### 1.     Freedom of Speech Element One: Protected Conduct

The first element of a prima facie freedom-of-speech case is that the plaintiff engaged in protected speech. *Dye*, 702 F.3d at 294. This involves a two-part inquiry. *Scarbrough v.*

---

[2] Defendant's briefing directs this argument only toward Plaintiff's freedom-of-association claim. Because Defendant completed its briefing before Plaintiff was allowed to file an amended complaint clarifying his speech and conduct claim, the Court gives Defendant the benefit of the doubt and construes this argument as directed to Plaintiff's Section 1983 claim as a whole.

*Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006). First, the court must determine "whether the employee's speech 'may be fairly characterized as constituting speech on a matter of public concern.'" *Id.* (quoting *Rose v. Stephens*, 291 F.3d 917, 920 (6th Cir. 2002)). Second, if the speech is of public concern, the court must apply the balancing test of *Pickering v. Board of Education*, 391 U.S. 563 (1968), "to determine if the employee's free speech interests outweigh the efficiency interests of the government as [an] employer." *Scarbrough*, 470 F.3d at 255 (quoting *Rose*, 291 F.3d at 920).

### a.        Speech on a Matter of Public Concern

Speech touches on a matter of public concern if it relates "to any matter of political, social, or other concern to the community." *Dye*, 702 F.3d at 295 (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). A matter of public concern "is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego v. Roe*, 543 U.S. 77, 83 (2004). Supporting a candidate for an election touches on a matter of public concern. *Dye*, 702 F.3d at 297.

The content, form, and context of a statement, in light of the whole record, all matter in determining whether a statement is of public concern. *Scarbrough*, 470 F.3d at 257. For example, personal complaints about a supervisor based on working with him or her on a daily basis are generally not protected, even if the supervisor is a public official. *Dye*, 702 F.3d at 296. Speech outside of the workplace on a subject other than government employment, on the other hand, generally is protected. *Scarbrough*, 470 F.3d at 256.

An employee must make the speech in question as a private citizen, and not pursuant to the employee's official duties, for it to be protected. *Fox v. Traverse City Area Pub. Schs. Bd. of*

*Educ.*, 605 F.3d 345, 348 (6th Cir. 2010).  The mere fact that an employee's speech occurs while an employee happens to be carrying out non-speech-related job duties, however, does not prevent the speech from being of public concern.  *See Farhat v. Jopke*, 370 F.3d 580, 592 (6th Cir. 2004).

Not all of a speech must address a matter of public concern for it to be protected.  *Id.* at 257 (quoting *Farhat*, 370 F.3d at 589).  On the other hand, mere passing references to a matter of public concern do not make a speech as a whole a matter of public concern if the primary focus of the speech advances only a private interest.  *Farhat*, 370 F.3d at 592–93.  In short, the focus of the court's inquiry is on determining the "focus," "point," or "purpose" of the employee's speech. *Id.* at 592.

As a policy matter, a government employee's right to speak on matters of public concern should be protected because "public employees are often the members of the community who are likely to have informed opinions as to the operation of their public employers, operations which are of substantial concern to the public."  *See v. City of Elyria*, 502 F.3d 484, 492 (6th Cir. 2007) (quoting *City of San Diego*, 543 U.S. at 82).

Defendant argues Plaintiff did not engage in speech on any matter of public concern because his speech involved telling coworkers they should vote for Mr. Mullins and that if Mr. Mullins were elected, Plaintiff would be made foreman.  (Doc. 18 at 11.)  The Court concludes that the part of Plaintiff's speech urging support for Mr. Mullins touches on a matter of public concern because Plaintiff was supporting a candidate for an election.  *See Dye*, 702 F.3d at 297. The Court agrees with Defendant that the part of Plaintiff's speech regarding his own future promotion does not touch on a matter of public concern, in that it is not "a subject of general interest and of value and concern to the public."  *City of San Diego*, 543 U.S. at 83.  Plaintiff's

inclusion of some non-protected speech, however, does not negate the Court's conclusion that the primary focus of Plaintiff's speech, on this record, touches on a matter of public concern. *See Scarbrough*, 470 F.3d at 256.

Defendant argues that because Plaintiff made the statements in question during work hours, he was making the statements pursuant to his official duties, and the speech is therefore not protected. (Doc. 18 at 11.) But speaking during work hours and speaking pursuant to one's official duties are distinct issues. As to the first, merely speaking during work hours does not make speech unprotected. *Farhat*, 370 F3d at 592. As to the second, an employee's speech occurs pursuant to the employee's official duties if making that speech is part of the employee's official job duties, either under a written job description or as part of the employee's professional responsibilities. *Fox*, 605 F.3d at 348–49. Defendant has presented no proof here that it was one of Plaintiff's job duties to speak about any matter at all.

Defendant asserts that Plaintiff's telling Mr. Mullins about a purportedly bad roadway so Mr. Mullins could use it in his campaign is not protected speech because it was made only to a single person, not to the general public. (Doc. 18 at 11.) Defendant offers no authority in support of the proposition that a statement must be made to more than one person to be protected by the First Amendment or to touch on a matter of public concern. The Court concludes that the condition of the roadways within the Defendant county is a matter of public concern.

Last, Defendant discounts Plaintiff's alleged assistance with videotaping a roadway for Mr. Mullins's campaign as speech on a matter of public concern, arguing it was done for Plaintiff's own personal political motives. Defendant relies on an unreported district-court opinion, *Wolfe v. Jarnigan*, No. 2:08–CV–10, 2011 WL 11888 (E.D. Tenn. Jan. 4, 2011), for the proposition that

actions taken for personal political motives are not protected speech. But *Wolfe* offers no support to Defendant. In *Wolfe*, the district court was examining the personal political motives of the defendant sheriff, not the personal political motives of the plaintiff employee. The court in *Wolfe*, in fact, found the plaintiff's support of a different candidate as sheriff to be protected under the First Amendment. *Id.* at *2, *4. The court went on to find there was no causation for the plaintiff's prima facie case where the defendant sheriff's decision not to rehire the plaintiff resulted from the defendant's fears of the political effects to *himself* if it became known he had rehired the plaintiff as a patrol officer, when the plaintiff had been convicted for driving while impaired in his previous position as a patrol officer. *Id.* at *1, *3, *6, *7. The *Wolfe* court's discussion of the personal political motives of a defendant do not remove First-Amendment protection from Plaintiff's speech and conduct merely because Plaintiff had his own personal political motives.

Considering the content, form, and context of Plaintiff's statements on the record currently before the Court, the Court concludes Plaintiff's speech touched on a matter of public concern. The Court will therefore proceed to the second step of the analysis.

### b.    *Pickering* Test

If a government employee's speech touches on a matter of public concern, the court must next apply the *Pickering* balancing test "to determine if the employee's free speech interests outweigh the efficiency interests of the government as [an] employer." *Scarbrough*, 470 F.3d at 255 (quoting *Rose*, 291 F.3d at 920). Similarly to determining whether speech touches on a matter of public concern, the court should consider "the manner, time, and place of the employee's expression," as well as the context out of which the statements arose, in applying the balancing test. *Id.* at 257 (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)). Relevant

10

considerations include "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Id.* (quoting *Rankin*, 483 U.S. at 388). Other considerations include whether the speech "was likely to foment controversy and disruption; . . . subverted department discipline; was false and the employer could not have easily rebutted or corrected the errors; and was directed toward a person whom the speaker normally contacted within the course of daily work." *City of Elyria*, 502 F.3d at 492–93 (quoting *Solomon v. Royal Oak Twp.*, 842 F.2d 862, 865 (6th Cir. 1988)).

"Speech and conduct that occur outside the office walls and that do not relate to work interfere less with office efficiency than conduct that occurs inside the office or that relates to the employee's work." *Scarbrough*, 470 F.3d at 257–58 (citing *Connick v. Myers*, 461 U.S. 138, 153 (1983)). Speech that is "disruptive to the effective operation of a government agency outweighs its First Amendment protections" under the *Pickering* test. *Dye*, 702 F.3d at 297 (First Amendment interests were outweighed where a regulatory agency's employee campaigned for a candidate "on-site during work hours to individuals regulated by the agency").

Defendant makes a number of conclusory statements about the effect of Plaintiff's speech within the Department. As Plaintiff points out, these statements are largely unsupported in the record. (*See* Doc. 23 at 5.) Defendant claims Plaintiff's speech "subverted department discipline," "affected the loyalty and confidence necessary to the [D]epartment's proper functioning," and "impeded the [D]epartment's general performance operation," for example, but provides no evidence to support these assertions. (*See* Doc. 18 at 12.)

Some of Defendant's conclusory assertions also involve genuine issues of material fact. Defendant argues Plaintiff's actions "were likely to and did foment controversy and disruption" by causing disruption and unrest in the Department's workforce. (*Id.* at 12.) Defendant again points to no specific proof of controversy or disruption in the record. To the extent Defendant would rely on the complaints it alleges employees made to Mr. Ferguson about Plaintiff, the Court finds there are genuine issues of material fact as to whether, how, and when these complaints occurred. The Court discusses these issues more fully in the following section, regarding causation, because that is where the parties presented their arguments on the issue. In short, Mr. Ferguson testified three employees' complaints, made directly to him, led him to terminate Plaintiff. (Doc. 23-2 [Ferguson Dep.] at 5–8.) Those three employees have testified they either never spoke to Mr. Ferguson about Plaintiff or did not do so until after Plaintiff was terminated. (Doc. 23-3 [Hall Dep.] at 2; Doc. 23-4 [Stout Dep.] at 2; Doc. 23-5 [Hawkins Dep.] at 2.) Defendant then asserts that the three employees' complaints were made instead to Deputy Superintendent Tony Brown, and Mr. Brown passed these complaints on to Mr. Ferguson. (Doc. 24-5 [Brown Decl.] ¶¶ 6, 7.) But again, this position appears to be contradicted by the testimony of two of the employees themselves. (Doc. 24-2 [Hall Dep.] at 5; Doc. 24-3 [Hawkins Dep.] at 4.) Having noted this dispute of fact, the Court will only say further here that even taking these facts in the light most favorable to Defendant—which the Court is not allowed to do at this juncture—employee complaints to their supervisors would show the opposite of subversion of department discipline and a negative effect on the loyalty and confidence necessary to operate a workplace.

Defendant further argues that Plaintiff's speech and conduct fail the *Pickering* test because they undermined Mr. Ferguson's loyalty and confidence in Plaintiff's ability to function within the Department. (Doc. 18 at 12.) This argument misconstrues the relevant case law. What matters is the loyalty and confidence that allow a workplace as a whole to function where personal loyalty and confidence are required, not whether a supervisor feels good or bad about the fact that an employee is supporting a different candidate in an election. *See Scarbrough*, 470 F.3d at 257.

Defendant also relies on the fact that some of Plaintiff's statements were made during working hours. While speech and conduct within working hours is generally more likely to interfere with work efficiency than speech and conduct outside of working hours, *see id.* at 257–58, Defendant has shown no evidence of interference with work efficiency. In addition, Mr. Ferguson's deposition testimony seems to indicate Plaintiff's objectionable speech took place largely during lunchtime or other breaks from work. (*See* Doc. 23-2 [Ferguson Dep.] at 3, 6.) Taking all reasonable inferences in Plaintiff's favor, the Court finds no interference with the Department's work efficiency.

Considering the manner, time, and place of Plaintiff's expression and the context in which it arose, the Court concludes Defendant has not shown its interest in the Department's efficient operation as an employer outweighs Plaintiff's free speech interests. Defendant is therefore not entitled to judgment as a matter of law on its argument that Plaintiff did not engage in protected speech. The Court will **DENY** Defendant's motion for summary judgment on these grounds.

## 2. Freedom of Association Element Three: Causation

In order to show the third element of a prima facie case, a causal connection between protected conduct and an adverse action, a plaintiff must show the adverse action he or she suffered

was motivated at least in part by the protected activity in which he or she engaged. *Dye*, 702 F.3d at 294. The Court of Appeals has summarized this analysis as focusing "on whether the adverse employment action was motivated in substantial part by the plaintiff's constitutionally protected activity." *Sowards*, 203 F.3d at 431.

Defendant argues Plaintiff's political affiliation with Mr. Mullins was not a substantial factor in Mr. Ferguson's 2016 decision to fire Plaintiff. Defendant points out that Mr. Ferguson took no adverse action against Plaintiff for his support of Mr. Mullins in 2012, he took no adverse action against other employees who supported Mr. Mullins in 2016, and he took no adverse action against Plaintiff in 2016 until Plaintiff himself took "actions that were disruptive to the workforce" in that they "negatively affected the operation of the . . . Department, the loyalty and confidence of the employees, and . . . subverted discipline." (Doc. 18 at 6.) Defendant's motion identifies Plaintiff's disruptive actions as "trying to get other workers to vote for Mr. Mullins while on the job, stating that he was going to be a foreman if Mr. Mullins was elected, and reporting a purported problem with a road to Mr. Mullins so that Mr. Mullins could use it in his campaign." (*Id.*)

Plaintiff responds that the reasons Defendant itself has proffered for Plaintiff's termination all relate directly to his "protected speech, conduct, and political association with and/or in support of Mr. Mullins." (Doc. 23 at 5.) Plaintiff argues there is a contradiction between the nature of these assertions and the sentence in Mr. Ferguson's Declaration that Plaintiff's support of Mr. Mullins "had nothing to do with [Plaintiff's] termination." (*Id.* at 4–5 (quoting Doc. 17-1 [Ferguson Decl.] ¶ 13).) Plaintiff also argues there is no evidence of disruption or negative effect on the Department's operation or its employees' loyalty, confidence, or discipline, in that Blake Hall, Mike Stout, and Jeff Hawkins, the three employees Mr. Ferguson identified as having

14

complained to him about Plaintiff, has each given deposition testimony denying having complained to Mr. Ferguson about Plaintiff before Mr. Ferguson terminated him.   (*Id.* at 5 (citing Doc. 17-1 [Ferguson Decl.] ¶ 10; Doc. 23-2 [Ferguson Dep.] at 5–7; Doc. 23-3 [Hall Dep.] at 2; Doc. 23-4 [Stout Dep.] at 2; Doc. 23-5 [Hawkins Dep.] at 2).)

In its reply, Defendant argues any disputes of fact about whether and when Mr. Hall, Mr. Stout, and Mr. Hawkins complained to Mr. Ferguson are not material.   (Doc. 24 at 8.)   Defendant alleges Mr. Ferguson learned of the three men's complaints about Plaintiff through Deputy Superintendent Brown, even if not directly from the three men themselves.   Defendant argues Mr. Ferguson is entitled to rely on such hearsay in making employment decisions.   As evidence, Defendant's reply attaches a declaration by Mr. Brown stating Mr. Hall, Mr. Stout, and Mr. Hawkins "reported to me that [Plaintiff] was talking so much about the election that it was being disruptive to their work and to the workforce based on his support for Mr. Mullins," and Mr. Brown says he passed those complaints on to Mr. Ferguson.   (Doc. 24-5 [Brown Decl.] ¶¶ 6–7.)

In addition, Defendant's reply describes some of Plaintiff's objectionable statements as not relating to Mr. Mullins, but instead being unprotected "vulgar criticisms/complaints of an employer made within the workplace," such as Mr. Hall's deposition testimony that Plaintiff criticized Mr. Ferguson multiple times on a personal level.   (Doc. 24 at 7 (quoting Doc. 24-2 [Hall Dep.] at 5 ("Q: Tell me what you remember Mr. Henry said between 15 and 20 times?   A: That he's a sorry S-O-B, don't have a clue about anything, even mentioned that he was a queer.   And, you know, that's about the extent of it.").)

Taking all facts and reasonable inferences in Plaintiff's favor, there is sufficient evidence of causation for the third element of Plaintiff's prima facie case.   Defendant's reply does present

the Court with evidence of some inappropriate personal statements Plaintiff allegedly made about Mr. Ferguson that facially have nothing to do with the campaign. (*See* Doc. 24-2 [Hall Dep.] at 5 (Plaintiff made inappropriate personal statements about Mr. Ferguson); Doc. 24-3 [Hawkins Dep.] at 3–4 (Plaintiff got mad at management, with no mention of campaign).) But there is also substantial evidence to show the statements and conduct that actually led to Plaintiff's termination related expressly to Plaintiff's support for Mr. Mullins's candidacy. (*See* Doc. 17-1 [Ferguson Decl.] ¶¶ 8–12; Doc. 23-2 [Ferguson Dep.] at 3–4, 7–8; Doc. 24-5 [Brown Decl.] ¶¶ 6–7; Doc. 24-4 [Stout Dep.] at 3–6.) Mr. Ferguson's declaration and Mr. Brown's declaration, in fact, both describe Plaintiff's relevant communications as having been about the campaign. It is not the Court's role to resolve such factual disputes at the summary judgment stage.

Also unavailing is Defendant's attempt to resolve the dispute of fact about how he heard about Plaintiff's allegedly disruptive conduct. Mr. Ferguson's declaration says his employees complained to him directly about Plaintiff's conduct, and this led to his decision to terminate Plaintiff. (Doc. 17-1 ¶¶ 10, 13.) Mr. Ferguson's deposition identifies three and only three complaining employees: Mr. Hall, Mr. Stout, and Mr. Hawkins. (Doc. 23-2 [Ferguson Dep.] at 5–6 (naming the three men); *see also id.* at 7–8 ("These are the guys that come to me, and these are the ones that told me there's a problem. . . . And I took it upon myself and took care of it. . . . They would tell me in person.").) But when deposed, two of those men testified that they did not talk to Mr. Ferguson about Plaintiff until after Plaintiff was terminated, and the third testified that he never talked to Mr. Ferguson about Plaintiff at all. (Doc. 23-3 [Hall Dep.] at 2; Doc. 23-4 [Stout Dep.] at 2; Doc. 23-5 [Hawkins Dep.] at 2.) This discrepancy thus presents a second genuine issue of material fact as to causation.

Defendant brushes away this issue of fact as not being material because, Defendant alleges, Mr. Ferguson heard about the men's complaints from Deputy Superintendent Brown, rather than directly. (Doc. 24 at 8–9.) Defendant submits a declaration from Mr. Brown stating as much: "During the election in 2016, Blake Hall, Mike Stout, and Jeff Hawkins **reported to me** that [Plaintiff] was talking so much about the election that it was being disruptive to their work and to the workforce based on his support of Mr. Mullins," and Mr. Brown told Mr. Ferguson of these reports of disruption "based on [Plaintiff's] support of Mr. Brian Mullins." (Doc. 24-5 [Brown Decl.] ¶¶ 6, 7 (emphasis added).)

The Court does not agree that Mr. Brown's declaration has the power to make immaterial a factual dispute between Mr. Ferguson's own testimony about the basis of a decision he made and the contrary testimony of the three men whose statements he claims led to that decision. It is especially unlikely to have that power here, because it appears there may **also** be a dispute of fact as to Mr. Brown's declaration. Mr. Brown declares Mr. Hall, Mr. Stout, and Mr. Hawkins complained to him about Plaintiff and Mr. Brown passed their reports on to Mr. Ferguson. (*Id.* ¶¶ 6–7.) But two of the men appear to have testified that they did not talk to Mr. Brown about Plaintiff's conduct, either. Mr. Hall testified that he did not complain to anyone about Plaintiff's insults about Mr. Ferguson (Doc. 24-2 at 5), and Mr. Hawkins testified that he "did not tell Tony [Brown] or Dennis [Ferguson] nothing" about Plaintiff's anger towards management (Doc. 24-3 at 4). The Court does not have the benefit of the entirety of the deposition transcripts, and the parties have not commented on this additional apparent contradiction. Whether there is a conflict as to Mr. Brown's declaration or not, the Court concludes there is a genuine issue of material fact

as to the basis of Mr. Ferguson's decision to terminate Plaintiff and, thus, as to the causation element of Plaintiff's prima facie case.

Defendant's other arguments on causation also fail. Defendant points to timing to argue it was Plaintiff's disruption of the workplace, not his political affiliation, that caused his termination. Defendant argues Mr. Ferguson knew of Plaintiff's affiliation with Mr. Dennis in 2012 and went almost four years without taking any adverse actions against him. The action Mr. Ferguson took in 2016 was therefore based on Plaintiff's new disruptiveness, not his longstanding political affiliation. But timing can cut both ways. The adverse action Mr. Ferguson ultimately took against Plaintiff occurred within two months of Plaintiff's making it known he would again support Mr. Mullins over Mr. Ferguson for the 2016 election. (*See* Doc. 23-2 [Ferguson Dep.] at 4–5.) A close proximity in time can by itself satisfy the causation element of a prima facie case. *Dye*, 702 F.3d at 305–06 (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). A two-month lapse of time is short enough to meet the low threshold of showing causation for purposes of a plaintiff's prima facie case. *Id.* at 306 (trial court erred in holding lapse of two months insufficient to establish causal connection) (citing *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012) (less than two months); *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (three months); *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (three months)). At this stage, the timing of Plaintiff's termination supports Plaintiff's showing on causation rather than defeats it.

The Court also cannot reject Plaintiff's showing of causation just because there were other employees who supported Mr. Mullins's candidacy. Mr. Ferguson's declaration states that other employees supported Mr. Mullins in 2016. (Doc. 17-1 [Ferguson Decl.] ¶ 8.) The declaration

as a whole implies that these other unnamed employees did not suffer adverse employment actions in 2016, but it does not state it. The Court must take all reasonable inferences in Plaintiff's favor, not Defendant's. *Matsushita Elec.*, 475 U.S. at 587. This argument fails as well.

Finally, Defendant argues Plaintiff cannot show causation as to a freedom-of-association claim because, taking the facts in the light most favorable to Plaintiff, he was terminated for engaging in political speech and conduct, which are defined differently than is political association. (*See, e.g.*, Doc. 24 at 9–10.) But Defendant has pointed to no authority to show the Court should dismiss a freedom-of-association claim merely because that affiliation was also expressed through speech.[3] A freedom-of-association claim may exist where there is no speech expressing it at all. *See, e.g.*, *Dye*, 702 F.3d at 300 (retaliation based only on perceived political affiliation is actionable). It does not follow that a freedom-of-association claim can exist *only* where there is no political speech expressing it. Defendant has not shown it is entitled to judgment as a matter of law on these grounds. The Court will **DENY** Defendant's motion for summary judgment on the causation element.

---

[3] The closest Defendant comes is the following quotation: "Political association claims usually concern membership in a political party and not active support of one party or candidate or another." (Doc. 24 at 10 (emphasis omitted).) First, *usually* is not the same as *always*. Second, the Court's research indicates this quotation is taken not from *Branti v. Finkel*, 445 U.S. 507 (1980), the opinion to which Defendant attributes it, but from *Heath v. Highland Park Sch. Dist.*, 800 F. Supp. 1470, 1475 (E.D. Mich. 1992), which itself cites to *Branti*. Third, even in *Heath*, the court went on to analyze the plaintiff's claim both as a political-association claim and as a free-speech claim. *See Heath*, 800 F. Supp. at 1475 (holding the plaintiff's association and speech claims both failed the *Pickering* balancing test).

### 3.     Termination Absent Protected Conduct

Defendant argues that, if the Court concludes Plaintiff has established a prima facie case and the burden of proof switches to Defendant, Defendant satisfies that burden.   Defendant points to Mr. Ferguson's declaration and Mr. Brown's declaration to show Mr. Ferguson was aware that Plaintiff's conduct was disrupting the workplace, and therefore Mr. Ferguson would have terminated Plaintiff even in the absence of any protected conduct.

Defendant's reliance on Mr. Ferguson's and Mr. Brown's declarations fares no better here than it did as to causation.   The conduct described in both declarations Defendant has proffered is protected political conduct.   In addition, there are genuine issues of material fact as to whether Mr. Hall, Mr. Stout, or Mr. Hawkins made any complaints about Plaintiff to Mr. Ferguson, whether they made any complaints about Plaintiff to Mr. Brown, and if so, what those complaints consisted of.   On this record it is impossible for the Court to conclude Defendant is entitled to summary judgment on whether it would have terminated Plaintiff absent Plaintiff's protected conduct.   The Court will **DENY** the part of Defendant's motion for summary judgment on the defense that Plaintiff would have been terminated even in the absence of any protected conduct.

### 4.     Municipal Liability Under Section 1983

Although local governmental bodies can be sued under 42 U.S.C. § 1983, they cannot be held vicariously liable for their employees' actions under a *respondeat superior* theory.   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).   Rather, they can be held liable only when an official policy or custom "'causes' an employee to violate another's constitutional rights."   *Id.* at 692.   A plaintiff may show the existence of such an official policy or custom in at least four different ways: "(1) the municipality's legislative enactments or official agency policies;

(2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Defendant argues Plaintiff has not identified a policy, practice or custom that caused a violation of his constitutional rights.   (Doc. 18 at 4.)   Thus, Defendant argues, Plaintiff is merely seeking to hold Defendant liable under an impermissible *respondeat superior* theory.

In response, Plaintiff relies on the second way listed above to show an official policy or custom: an action taken by an official with final decision-making authority.   (Doc. 23 at 7 (quoting *Hodges v. Van Buren Cty.*, 227 F. Supp. 3d 907, 915–16 (E.D. Tenn. 2017)).)   Plaintiff argues Mr. Ferguson had final decision-making authority in Department personnel matters as a matter of Tennessee law, which authorizes each county road superintendent "to determine the total number of employees of the highway department, to determine personnel policies, hours of work, to establish job classifications, and to establish policies and wages within the classifications."   Tenn. Code Ann. §§ 54-7-103, 54-7-109(c).   Because Mr. Ferguson had final decision-making authority for the Department, and because Mr. Ferguson was the one who fired Plaintiff, Plaintiff argues he has adequately shown that an official policy or custom caused the violation of his constitutional rights.

Defendant's reply addresses some parts of Plaintiff's argument about municipal liability, but it wholly fails to address Plaintiff's two central contentions: that an official policy or custom may be shown through the actions of an official with final decision-making authority, and that Mr. Ferguson, who made the decision to fire Plaintiff, was such an official.

The Court concludes that Plaintiff's unopposed argument in this regard is well founded. Because the actions of an official with final decision-making authority may establish an official policy or custom for purposes of an action under 42 U.S.C. § 1983, and because it is undisputed that Mr. Ferguson was such an official, the Court will **DENY** Defendant's motion for summary judgment on municipal-liability grounds.[4]

## B.    Tennessee Code Annotated § 2-19-134

Under Tennessee law, it is a misdemeanor "to coerce or direct any employee to vote for any . . . person who may be a candidate for any office," "to threaten the discharge of such employee if the employee votes or does not vote for any such candidate . . . for office," or "to discharge any employee on account of such employee's exercise or failure to exercise the suffrage, or to give out or circulate any statement or report calculated to intimidate or coerce any employee to vote or not to vote for any candidate . . . ."   Tenn. Code Ann. § 2-19-134.

Defendant argues Plaintiff's state-law claim must be dismissed because the statute does not establish a private right of action.   (Doc. 18 at 15 (citing *Buckner v. Carlton*, 623 S.W.2d 102 (Tenn. Ct. App. 1981) (stating standard for implying a private right of action under a criminal statute), *superseded by statute on other grounds as stated in Hardy v. Tournament Players Club*

---

[4] As another basis for municipal liability, Plaintiff points to the portion of Defendant's Personnel Guidelines that expressly forbids Defendant's employees from engaging in political activities: "County employees, with the exception of elected officials, are not allowed to participate in political activities while working for Roane County."   (Doc. 23-7 [Roane Cty. Gov't Employee Handbook: Personnel Guidelines] at 7.)   Defendant also makes no reply to this portion of Plaintiff's argument.   Because Plaintiff's argument regarding an official with final decision-making authority is sufficient to defeat Defendant's motion for summary judgment, the Court need not address Defendant's Personnel Guidelines at this time.

*at Southwind, Inc.*, 513 S.W.3d 427, 441 (Tenn. 2017)).)   Plaintiff does not address this argument or his state-law claim in his response.   An argument not addressed in a responding party's brief is deemed waived.   *See Taylor v. Unumprovident Corp.*, No. 1:03CV1009, 2005 WL 3448052, at *2 (E.D. Tenn. Dec. 14, 2005).   Therefore, the Court will **GRANT** Defendant's motion for summary judgment on Plaintiff's state-law claim, and Plaintiff's claim under Tennessee Code Annotated § 2-19-134 will be **DISMISSED**.

### D.     Punitive Damages

Defendant argues Plaintiff's claim for punitive damages must be dismissed because governmental entities are not subject to awards of punitive damages.   (Doc. 18 at 16 (citing *City of Newport v. Fact Concerts, Inc.*, 543 U.S. 247, 271 (1981) (holding municipalities are immune from punitive damages under 42 U.S.C. § 1983)).)   Plaintiff also does not address this argument in his response.   As stated above, an argument not addressed in a responding party's brief is deemed waived.   *See Taylor*, 2005 WL 3448052, at *2.   Therefore, the Court will **GRANT** Defendant's motion for summary judgment on Plaintiff's punitive-damages claim, and Plaintiff's claim for punitive damages will be **DISMISSED**.


## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court will **GRANT IN PART** Defendant's motion (Doc. 17) as to Plaintiff's state-law claim and his claim for punitive damages.   Plaintiff's claims under Tennessee Code Annotated § 2-19-134 and for punitive damages will be **DISMISSED**.   The Court will **DENY IN PART** Defendant's motion as to Plaintiff's claim under 42 U.S.C. § 1983.

An appropriate order will enter.

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**